1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ISAAC MONGIA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF FRESNO, *et al.*<br><br>Defendants. | Case No. 1:23-cv-01234-JLT-EPG<br><br>SCREENING ORDER DIRECTING PLAINTIFF TO:<br><br>(1) FILE A SECOND AMENDED COMPLAINT; OR<br><br>(2) NOTIFY THE COURT THAT PLAINTIFF WANTS TO STAND ON THE FIRST AMENDED COMPLAINT<br><br>(ECF No. 13)<br><br>**THIRTY (30) DAY DEADLINE** |
|---|---|

Plaintiff Isaac Mongia proceeds *pro se* and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983. (ECF Nos. 3, 13). Plaintiff filed a First Amended Complaint on May 17, 2024, which is now before the Court for screening.[1] (ECF No. 13). Plaintiff's First Amended Complaint generally concerns his arrest for violation of a restraining order.

Upon review, the Court concludes that Plaintiff fails to state a claim upon which relief may be granted. Plaintiff now has options as to how to proceed in this matter. Plaintiff may file a second amended complaint, if Plaintiff believes that additional facts would state a cognizable claim. If Plaintiff files a second amended complaint, the Court will screen that amended complaint in due course.

---

[1] This is the first screening of Plaintiff's claims, as Plaintiff sought leave to amend his original complaint shortly after he filed this action. (ECF Nos. 7, 8).

1

Alternatively, Plaintiff may file a statement with the Court that he wants to stand on the First Amended Complaint and have it reviewed by a district judge, in which case the Court will issue findings and recommendations consistent with this order.

## I.   SCREENING REQUIREMENT

As Plaintiff is proceeding *in forma pauperis* (ECF No. 3), the Court screens the First Amended Complaint under 28 U.S.C. § 1915. That statute requires the Court to dismiss a complaint, or any portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. See 28 U.S.C. § 1915(e)(2)(B).

Pleadings of *pro se* plaintiffs are construed liberally and "held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

## II.   SUMMARY OF FIRST AMENDED COMPLAINT

In his First Amended Complaint, Plaintiff brings claims against the City of Fresno ("the City") and seven Fresno Police Department ("FPD") officers: Garza, Arthur Hernandez, Annabel Fregosco, Gayla Soriano, J. Jones, E. Gonzalez, and Price.[2] (ECF No. 13 at 2–4). Plaintiff also asserts claims against Racquel Clifton ("Ms. Clifton"), Armando Gonzalez ("Mr. Gonzalez"), Randy Clifton ("Mr. Clifton"), and ten John Doe defendants ("Does 1-10"). (Id. at 4–5).

### A.   Factual Allegations

Plaintiff's claims in this case arise from an incident that occurred on April 22, 2023, outside Ms. Clifton and Mr. Gonzalez's residence. (Id. at 7–10). Plaintiff and Ms. Clifton are the parents of a minor daughter, C.M., whom Plaintiff alleges was being physically abused by her stepfather, Mr. Gonzalez. (Id. at 6–7). Plaintiff did not have custody of his daughter at the time, which he maintains was the result of "false allegations" in family court proceedings and a conspiracy orchestrated by Ms. Clifton's father, Mr. Clifton. (Id.) Plaintiff asserts that he made multiple attempts to report Ms. Gonzalez's alleged abuse of C.M., without success. (Id. at 7).

On April 22, 2023, Plaintiff alleges that he helped organize a protest at a local park regarding the "wrongful removal of children by DCFS social workers and the failure – or refusal – of state officials to investigate genuine cases of child abuse." (Id.) During the protest, Plaintiff

---

[2] Plaintiff did not provide first names for Defendants Garza, Jones, E. Gonzalez, and Price.

2

voiced his concerns regarding the alleged abuse of his daughter, which prompted others present at the protest to encourage him to go to a police station and file a report regarding the abuse. (Id.) Plaintiff agreed to go to FPD, and left the park with a group of individuals from the protest. (Id.) Upon arriving outside the police station, Plaintiff alleges that one of the individuals accompanying him, Marissa Hernandez ("Marissa"), called FPD. (Id. at 8). Defendant Garza ("Officer Garza") answered the dispatch call, during which Plaintiff alleges he and Marrisa reported the alleged abuse of Plaintiff's daughter as well as Plaintiff's suspicion that Ms. Clifton was using methamphetamine. (Id.) Plaintiff asked to meet with officers at the police station, but Officer Garza allegedly told Plaintiff that "it could take several hours for an officer to arrive at [police] headquarters" and instead instructed him to go to the location where C.M. was, i.e., Ms. Clifton's residence, where police officers would meet Plaintiff. (Id.)

Plaintiff proceeded to Ms. Clifton's residence with Marissa and five other individuals who had accompanied him from the protest. (Id. at 7–8). Upon reaching the residence, Plaintiff saw that there was no police officer present. (Id. at 8). While Plaintiff was still outside on the street, he alleges that Ms. Clifton and Mr. Gonzalez exited the house, and Ms. Clifton instructed Mr. Gonzales to "attack Plaintiff and everyone [with him]." (Id.) According to Plaintiff, Mr. Gonzalez:

> then went inside the home and positioned his arm behind his back to indicate that he was in possession of a gun[.] [Mr. Gonzalez] directly said, "I have a gun."
>
> [Mr. Gonzalez] began to physically attack Plaintiff in front of the children, including C.M.[.] [Mr. Gonzalez] picked up Plaintiff's bullet proof vest . . . and threw it at him, which hit Plaintiff in the neck[.] [Mr. Gonsales] also broke Plaintiff's media recording equipment that is valued over $1,000.

(Id. at 8–9). Mr. Gonzalez also allegedly chased Plaintiff down the street, pinned Plaintiff to a car, and struck him. (Id. at 9).

Plaintiff alleges that the group of individuals with him scattered and hid behind vehicles when Mr. Gonzalez announced that he had a gun. (Id.) According to Plaintiff, Marissa called 911 a second time, identified herself as the individual who had called earlier, and told the dispatch officer that a male wearing shorts had exited Ms. Clifton's house, announced that he had a gun, and was now "trying to fight and harm" Plaintiff. (Id.) Plaintiff alleges that Mr. Gonsales was the

3

only male wearing shorts. (Id.).

When police officers arrived at the scene, Plaintiff asserts that he was falsely arrested for violating a restraining order. (Id. at 10). Plaintiff alleges that he was arrested despite informing the arresting officer, Defendant Hernandez ("Officer Hernandez"), that he was unaware of the restraining order and had only gone to Ms. Clifton's residence because "[O]fficer Garza directed him to go there to make the police report." (Id. at 3, 10). Plaintiff alleges he advised officers of his pre-existing spinal injuries during his arrest but was given "no accommodations over handcuffs." (Id. at 6). He was taken to the emergency room before being booked into county jail, and subsequently released after posting bail. (Id. at 9–10). Plaintiff asserts that he may have been arrested in retaliation for members of his group disclosing to officers that they had filed federal lawsuits. (Id. at 7, 11).

According to Plaintiff, Mr. Gonzalez was issued a citation for the "misdemeanor offense" of "PC 242 Battery" and not taken into custody. (Id. at 3, 9). Plaintiff maintains that Mr. Clifton "used his connections" through his "membership with the Fresno Lodge" to ensure that Mr. Gonzalez would not be arrested. (Id. at 7). Plaintiff further asserts that Mr. Gonzalez should have been charged with the "felony offense" of "Deprivation of Equal Protection: Penal Code § 594" because he broke Plaintiff's media recording equipment. (Id. at 9 n.6).

As a result of the April 22, 2023 incident, Plaintiff alleges that his pre-existing spinal injuries were exacerbated, that he "lost a remarkable amount of weight," and that he now suffers from "near daily panic attacks and insomnia headaches," anxiety, and depression. (Id. at 6, 11).

### B.  Plaintiff's Claims

Plaintiff raises twelve[3] causes of action in the First Amended Complaint. (Id. at 13–22). He asserts the following claims under § 1983:[4]

- "Procedural Due Process and Unwarranted Seizure, Familial Association" claim against "Fresno Police and Does 1-5"

- "Substantive Due Process, the Right[] to be Free from the Use of Deception, and

---

[3] Although Plaintiff enumerates twelve counts, the Court notes that he raises sub-claims in some counts. For purposes of screening the First Amended Complaint, the Court will not identify the claims by count.
[4] For readability, the Court has made minor alterations such as punctuation and capitalization to Plaintiff's claims, as quoted, without identifying each change.

4

Familial Association" claim against "all Defendants and Does 1-10"

- "Fourth Amendment Violations" against "Defendants, [names], City of Fresno, and Does 1-3"
- "First Amendment Violations (Retaliation)" against "Defendants, [names], City of Fresno, and Does 1-3"
- "Deprivation of Equal Protection" against "Defendants, [names], City of Fresno, and Does 1-3"
- "Conspiracy" against "Defendants, [names], City of Fresno, and Does 1-3"
- "ADA Accommodations" against "Defendants, [names], City of Fresno, and Does 1-3"[5]
- Monell[6] claim against the City and Does 1-5.

(Id. at 13–20).

In addition, Plaintiff asserts four causes of action under California law against Defendants: a claim for violation of California's Bane Act, Cal. Civ. Code § 52.1, and state tort claims of assault, battery, and negligence. (Id. at 20–22).

As relief, Plaintiff seeks "general damages," punitive damages, and injunctive relief. (Id. at 22–23).

### III. ANALYSIS OF FIRST AMENDED COMPLAINT

#### A. Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393–94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also

---

[5] This claim is repeated twice in the First Amended Complaint. (See ECF No. 13 at 19–20 (Counts 6 and 7)).

[6] Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978).

5

Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676–77 (2009). In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell, 436 U.S. 658, 691, 695 (1978).

**B.     Federal Rule of Civil Procedure 8(a)**

As an initial matter, the Court finds that the First Amended Complaint does not comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must also contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Detailed factual

6

allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

      The First Amended Complaint is subject to dismissal under Rule 8(a)(2) because Plaintiff has failed to set forth a clear and plain statement of his claims. Plaintiff used placeholders such as "prepare supporting facts," "relating facts here," and "stem below" throughout the First Amended Complaint. (See ECF No. 13 at 4, 6, 14). It is evident from these placeholders that Plaintiff has not stated the factual basis for his claims. Plaintiff also used the placeholder "Defendants [names]" for several claims, thereby leaving the Court and Defendants guessing as to which claim is brought against which Defendant. Rule 8 is not satisfied when "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery." McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996).

      The First Amended Complaint is also replete with legal conclusions and unsupported conclusory statements such as "Conspiracy—Father connected with the city officials" and "ADA Accommodations—Spinal Injury Protections." (Id. at 6). Moreover, Plaintiff repeatedly incorporates all preceding paragraphs by reference. This practice—sometimes called a shotgun pleading—has been found to violate Rule 8. Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321 (11th Cir. 2015) ("The most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."); Caruso v. Hill, 2020 WL 4018141, at *11 (E.D. Cal. July 15, 2020) ("[W]hile an amended complaint may incorporate by reference any prior paragraphs that are necessary to pleading a plausible cause of action, the amended complaint may

7

not use the improper expedient of simply incorporating by reference all prior paragraphs, be they supportive or relevant to the cause of action or not, since such a practice does not provide adequate notice for purposes of Rule 8.").

In short, the First Amended Complaint does not give Defendants fair notice of Plaintiff's claims and the grounds upon which they rest. See Lehman v. Nelson, 862 F.3d 1203, 1211 (9th Cir. 2017). Although the First Amended Complaint is subject to dismissal on this basis, the Court will proceed to screen the First Amended Complaint to the best it can understand Plaintiff's allegations.

### C.    Section 1983 Private Actor Liability

The Court first turns to Plaintiff's claims under Section 1983 against Ms. Clifton, Mr. Gonzalez, and Mr. Clifton. As discussed above, Section 1983 imposes civil liability on individuals acting under color of state law. Private parties are not generally acting under color of state law for the purposes of Section 1983. Price v. Hawaii, 939 F.2d 702, 707–08 (9th Cir. 1991) ("Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed").

Here, it is clear from the First Amended Complaint that Ms. Clifton and Mr. Gonzalez are private persons and not employed by any public entity. Plaintiff does not allege any facts suggesting that either Ms. Clifton or Mr. Gonzalez acted under the color of state law during the April 22, 2023 incident.

As for Mr. Clifton, although Plaintiff alleges that Mr. Clifton "cleans the water for the city of Fresno," see ECF No. 13 at 6, he does not explain how Mr. Clifton acted under color of state law on April 22, 2023, when Plaintiff was arrested. Nor does Plaintiff set forth any facts—beyond conclusory statements—that Mr. Clifton acted jointly with city officials or employees to deprive Plaintiff of custody of C.M. See Lockhead v. Weinstein, 24 F. App'x 805, 806 (9th Cir. 2001) ("[M]ere furnishing of information to police officers does not constitute joint action"); Deeths v. Lucile Slater Packard Children's Hosp. at Stanford, 2013 WL 6185175, at *10 (E.D. Ca. Nov. 26, 2013) ("Even if [private actor] made false statements to [County] social workers regarding the need to remove [minor] from Plaintiff's care, supplying information alone does not amount to

conspiracy or joint action under color of state law."). Thus, in the absence of factual allegations that would support Section 1983 liability, the Court finds that Plaintiff has failed to state any constitutional claims against Ms. Clifton, Mr. Gonzalez, or Mr. Clifton.

### D. Claims against Defendants Soriano, Fregosco, Jones, E. Gonzalez, and Price

Although Plaintiff identifies Defendants Soriano, Fregosco, Jones, E. Gonzalez, and Price as FPD officers who assisted Officer Hernandez, the First Amended Complaint is devoid of any specific factual allegations concerning these defendants. Plaintiff does not allege what, if any, involvement these officers had in the April 22, 2023 incident or Plaintiff's subsequent arrest. In the absence of allegations specifying how each of these officers personally participated in the deprivation of his rights, Plaintiff has failed to state a claim for relief against these officers.

### E. Familial Association Claims under the First and Fourteenth Amendments

In Counts 1 and 2 of the First Amended Complaint, Plaintiff asserts violations of his and C.M.'s procedural and substantive due process rights to familial association. (ECF No. 13 at 13–15). "The standard for analyzing a § 1983 claim for interference with the right to familial association depends on the context in which the case arises." Murguia v. Langdon, 61 F.4th 1096, 1118 (9th Cir. 2023). Here, Plaintiff's claims are grounded in the First and Fourteenth Amendments.

The Supreme Court has recognized that the Fourteenth Amendment "protects the liberty interest 'of parents in the care, custody, and control of their children.'" Keates v. Koile, 883 F.3d 1228, 1235–36 (9th Cir. 2018) (quoting Troxel v. Granville, 530 U.S. 57, 65 (2000)); see also Santosky v. Kramer, 455 U.S. 745, 753 (1982) (discussing "the fundamental liberty interest of natural parents in the care, custody, and management of their child"). The First Amendment also protects "family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" Lee v. City of Los Angeles, 250 F.3d 668, 685 (9th Cir. 2001) (quoting Board of Dirs. v. Rotary Club, 481 U.S. 537, 545 (1987)).

Ninth Circuit "case law clearly establishes that the rights of parents and children to familial association under the Fourteenth [and] First . . . Amendments are violated if a state

official removes children from their parents without their consent, and without a court order, unless information at the time of the seizure, after reasonable investigation, establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury, and the scope, degree, and duration of the intrusion are reasonably necessary to avert the specific injury at issue." Keates, 883 F.3d at 1237–38.

Here, the factual predicate for Plaintiff's § 1983 familial association claims is unclear. Plaintiff captions the first claim as "unwarranted seizure," but there are no factual allegations that any Defendant "seized" C.M. from Plaintiff's custody. Instead, Plaintiff alleges that family court proceedings resulted in him losing custody of C.M., and that presumably, C.M. was at Ms. Clifton's residence on April 22, 2023 pursuant to a custody order.

Plaintiff's second claim is captioned "judicial deception," but there are no factual allegations that would support such a claim. "[A]s part of the right to familial association, parents and children have a 'right to be free from judicial deception' in child custody proceedings and removal orders." David v. Kaulukukui, 38 F.4th 792, 800 (9th Cir. 2022). "To state a violation of the constitutional right to familial association through judicial deception, a plaintiff must allege (1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." Id. at 801 (internal citation and quotation marks omitted). "A misrepresentation or omission is material if a court 'would have declined to issue the order had [the defendant] been truthful.'" Id. (quoting Greene v. Camreta, 588 F.3d 1011, 1035 (9th Cir. 2009)). Beyond a conclusory assertion that there were "false accusations" in family court proceedings, Plaintiff provides no allegations that would support a claim of judicial deception in any child custody proceedings involving C.M.

In light of the above pleading deficiencies, Plaintiff has not stated a claim for relief with respect to his familial association claims. Not only that, these claims may also implicate the Rooker-Feldman doctrine and this Court's subject matter jurisdiction. Under the Rooker-Feldman doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. DeGrandy, 512 U.S. 997, 1005–06 (1994) (citing District of Columbia Court of Appeals v.

Feldman, 460 U.S. 462, 482 (1983), and Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923)). Review of state court decisions may only be conducted in the United States Supreme Court. Feldman, 460 U.S. at 476, 486; Rooker, 263 U.S. at 416. The Rooker-Feldman jurisdictional bar applies even if the complaint raises federal constitutional issues. Feldman, 460 U.S. at 486. More specifically, the bar applies if the challenge to the state court decision is brought as a Section 1983 civil rights action. See Branson v. Nott, 62 F.3d 287, 291 (9th Cir. 1995).

"[A] federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal. As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." Doe v. Mann, 415 F.3d 1038, 1043 (9th Cir. 2005) (quoting Noel v. Hall, 415 F.3d 1145, 1158 (9th Cir. 2003)). The Rooker-Feldman doctrine applies not only to final state court orders and judgments, but to interlocutory orders and non-final judgments issued by a state court as well. Doe & Assoc. Law Offices v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001).

Notwithstanding the foregoing, "for Rooker-Feldman to apply, a plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief." Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004). "If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction." Noel, 341 F.3d at 1164. "A plaintiff alleging extrinsic fraud on a state court is not alleging a legal error by the state court; rather, he or she is alleging a wrongful act by the adverse party." Kougasian, 359 F.3d at 1140–41.

Here, the First Amended Complaint does not contain enough information for the Court to make a conclusive determination of whether Rooker-Feldman bars jurisdiction over Plaintiff's familial association claims. For example, while Plaintiff does not explicitly state that he is seeking relief from the family court's custody orders, he does seek injunctive relief that could be construed as directed to those orders. (ECF No. 13 at 22–23). He also seeks declaratory relief regarding the City's processing of juvenile dependency petitions. (Id.) Additionally, the nature of Plaintiff's allegations may necessarily implicate review of any family court orders concerning the

custody of his daughter.

**F.     False Arrest**

Plaintiff raises a false arrest claim under the Fourth Amendment, asserting that his arrest on April 22, 2023 was without probable cause. (ECF No. 13 at 17–18). To state a claim for false arrest under § 1983, a plaintiff must show that he was arrested without probable cause or other justification. Dubner v. City & Cnty. of S.F., 266 F.3d 959, 964 (9th Cir. 2001). Probable cause exists if, at the time of the arrest, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime. Blankenhorn v. City of Orange, 485 F.3d 463, 471–72 (9th Cir. 2007).

Plaintiff fails to allege facts demonstrating that there was not probable cause for his arrest for violating a restraining order. Plaintiff admits in the First Amended Complaint that there was a restraining order issued against him. He alleges he lacked notice of the restraining order, but he does not specify how his lack of knowledge resulted in the absence of probable cause for his arrest. Plaintiff therefore fails to state a claim for relief.

Moreover, Plaintiff does not indicate in the First Amended Complaint whether he was subject to state criminal proceedings as a result of his arrest. If his arrest led to a conviction, Plaintiff's false arrest may also be barred under Heck v. Humphrey, 512 U.S. 477 (1994). "Under Heck, a § 1983 claim must be dismissed if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence, unless the conviction or sentence has already been invalidated." Zuegel v. Mountain View Police Dep't, No. 21-16277, 2024 WL 1007500, at *1 (9th Cir. Mar. 8, 2024). Alternatively, this case may be subject to a stay or dismissal if state criminal proceedings are ongoing. Absent extraordinary circumstances, federal courts may not interfere with ongoing state criminal proceedings. Younger v. Harris, 401 U.S. 37, 43–54 (1971). This doctrine, called Younger abstention, is rooted in the "desire to permit state courts to try state cases free from interference by federal courts." Id. at 43. "Younger abstention is appropriate when: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the

ongoing state judicial proceeding." Arevalo v. Hennessy, 882 F.3d 763, 765 (9th Cir. 2018) (alterations, internal quotation marks, and citation omitted). Thus, because Heck or Younger may be implicated in this matter, if Plaintiff chooses to amend the First Amended Complaint, he should specify the current status of any state proceedings that followed his arrest.

### G. First Amendment Retaliation

To state a First Amendment retaliation claim, Plaintiff must plausibly allege that "(1) [he] engaged in a constitutionally protected activity, (2) Defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in Defendants' conduct." Sampson v. Cnty. of Los Angeles by & through Los Angeles Cnty. Dep't of Child. & Fam. Servs., 974 F.3d 1012, 1019 (9th Cir. 2020). "[Plaintiff] must establish that Defendants' retaliatory animus was the but-for cause of [his] injury, meaning that the adverse action against [him] would not have been taken absent the retaliatory motive." Id. (internal quotation marks and citation omitted).

Plaintiff fails to state a First Amendment retaliation claim. Plaintiff does not specify which defendants he is asserting this claim against. (See ECF No. 13 at 18 (using placeholder "Defendants [names]")). Nor does he link any specific facts to this claim. He does not identify the protected conduct that he engaged in, or the alleged retaliatory actions taken by Defendants. As such, he fails to state a claim for relief.

### H. Equal Protection

Plaintiff also asserts an equal protection claim against "Defendants [names]," the City, and Does 1-3. "The Equal Protection Clause [of the Fourteenth Amendment] requires the State to treat all similarly situated people equally." Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). To state an equal protection claim under section 1983, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis and citation omitted). Alternatively, if an action does not involve an identifiable class, a plaintiff may still establish an equal protection claim if she "alleges that she has been intentionally treated

differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citations omitted); Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 601 (2008).

Here, based on Plaintiff use of placeholders—specifically, "Defendants [names]" and "relat[e] facts here"—it is not clear what the factual basis is for Plaintiff's equal protection claim or the parties against whom he is asserting this claim. Even setting that aside, Plaintiff fails to allege in the First Amended Complaint that he is a member of a protected class and that any of the named Defendants acted with the intent of discriminating against Plaintiff based on his membership in that protected class.

To the extent Plaintiff's equal protection claim is based on his allegation that FPD officers at the scene treated him differently than Mr. Gonzalez because they arrested him, and not Mr. Gonzalez, the Court finds that Plaintiff has not sufficiently stated a claim for relief. Plaintiff does not allege that he was similarly situated to Mr. Gonzalez. Nor does he allege that the officers lacked a rational basis for treating Plaintiff differently from Mr. Gonzalez. See Vill. of Willowbrook, 528 U.S. at 564 (providing a "class of one" plaintiff "must allege that . . . [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"); Le Fay v. Le Fay, No. 1:13-cv-1362, 2015 WL 106262, at *7 (E.D. Cal. Jan. 7, 2015) (finding that there were no allegations in the complaint suggesting that that the decision not to arrest a potential suspect "was in any way outside the officer's discretion" and noting that "[i]t cannot be the case that every instance of a police decision not to arrest a potential suspect is subject to review on equal protection grounds"); Solis v. City of Fresno, No. 1:11-cv-53, 2011 WL 5825661, at *7 (E.D. Cal. Nov. 17, 2011) (dismissing plaintiff's class-of-one equal protection claim where the plaintiff did not plead a high level of similarity between herself and the group to which she seeks to compare herself). Accordingly, Plaintiff has failed to state an equal protection claim.

### I.     Conspiracy

To state a claim for conspiracy under Section 1983, Plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual

deprivation of his constitutional rights resulted from the alleged conspiracy," Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir. 1989)). Additionally, Plaintiff must show that Defendants "conspired or acted jointly in concert and that some overt act [was] done in furtherance of the conspiracy." Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974). "[M]ore than vague conclusory allegations are required to state a [conspiracy] claim." Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

Similar to his other claims, Plaintiff does not clearly identify the parties against whom he asserts a conspiracy claim. (See ECF No. 13 at 19 (using placeholder "Defendants [names]")). In terms of factual allegations, Plaintiff alludes to a conspiracy involving Mr. Clifton "based on information and belief." (Id. at 7). Specifically, he alleges "based on information and belief" that Mr. Clifton "used his connections with . . . the Fresno Lodge to deprive Plaintiff of his custody [of C.M.] in the family court system." See ECF No. 13 at 7. Although he asserts that Mr. Clifton is "connected with city officials" and is friends with "the DA and lawyers . . . [in] the Fresno Lodge," Plaintiff does not provide any specific facts regarding how Mr. Clifton used these connections and/or friendships to "deprive Plaintiff of his custody [of C.M.] in the family court system." Id. at 6–7. His allegations are too conclusory and vague to state a claim that Mr. Clifton conspired with others to deprive Plaintiff of his constitutional rights. See Twombly, 550 U.S. at 551, 566 (allegation "upon information and belief" that defendants had entered into a conspiracy based on parallel conduct failed to state a claim for civil conspiracy under Rule 8's plausibility standard). Accordingly, Plaintiff's conspiracy claim is subject to dismissal.

**J.      ADA Claims**

Plaintiff also alleges two Section 1983 claims that are predicated upon violations of the Americans with Disabilities Act ("ADA"). (See ECF No. 13 at 19–20).

The Ninth Circuit has held that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the

15

ADA." Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002); Okwu v. McKim, No. 2:10-cv-0653, 2011 WL 219565, at *5 (E.D. Cal. Jan. 19, 2011) ("Section 1983 is not a vehicle to vindicate statutory rights secured by the ADA; rather, plaintiff must sue under the ADA directly. This is because § 1983 cannot be used to enforce rights created by a statutory scheme that already includes comprehensive remedial measures.") (internal citations omitted). Accordingly, to the extent Plaintiff's § 1983 claims are predicated upon a violation of the ADA, Plaintiff fails to state a cognizable legal theory.

### K. **Monell** Liability

Finally, Plaintiff fails to state a Monell claim against the City and Does 1-5. (ECF No. 13 at 11–12, 20). A municipality or other local governmental entity may be liable for a constitutional deprivation where the plaintiff can "satisfy the requirements for municipality liability established by Monell and its progeny." Mendiola-Martinez v. Arpaio, 836 F.3d 1239, 1247 (9th Cir. 2016). Under Monell, an entity defendant cannot be held liable for a constitutional violation solely because it employs a tortfeasor. 436 U.S. at 691. An entity defendant can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. Id. at 694. "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001) (quoting Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992)).

> To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.

Oviatt, 954 F.2d at 1474 (internal citation and quotation marks omitted).

Initially, it is unclear which defendants Plaintiff is asserting his Monell claim against. Although Plaintiff names the City of Fresno and Does 1 through 5 as defendants, his supporting "Monell Related" facts section references "West Covina Police Department" and "Does 6 through 10" rather than Does 1 through 5. (See ECF No. 13 at 12, 20).

Insofar as Plaintiff intends to assert a Monell claim against the City of Fresno, he fails to

16

identify a specific municipal policy, practice, or custom that was the moving force behind the alleged constitutional deprivations he suffered. Rather, his supporting "Monell Related" facts section consists of conclusory and vague assertions that are not sufficient to state a Monell claim against the City of Fresno. For example, Plaintiff generally asserts "the existence of an entrenched culture, policy or practice of promoting, tolerating, and/or ratifying with deliberate indifference, the making of improper detentions and arrests, retaliation, conspiracy, and deprivation of equal protection to cover up Defendant Officers' misconduct." (ECF No. 13 at 12). But Plaintiff does not mention any specific FPD policy or custom that was the moving force behind the officers' alleged "misconduct." Moreover, although Plaintiff asserts that West Covina Police Department officers and Defendant Officers "engaged in a repeated pattern and practice of detaining children from their parents without a warrant or exigent circumstances," Plaintiff again does not allege that this pattern or practice was the result of an official City of Fresno policy or custom. Additionally, Plaintiff does not allege that the FPD officers who reported to the scene ever detained C.M. or removed her from Plaintiff's custody without a warrant or exigent circumstances. For these reasons, Plaintiff's Monell claim is subject to dismissal.

### L. State Law Claims

Finally, Plaintiff raises state tort claims of assault, battery, and negligence as well as a claim for violation of California's Bane Act, Cal. Civ. Code § 52.1. Plaintiff, however, fails to identify the factual allegations supporting these claims. Thus, these claims are subject to dismissal.

Additionally, in order to proceed with a state law claim, Plaintiff is informed that violation of state tort law, state regulations, or other state laws is not sufficient to state a claim for relief under § 1983. Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. Here, the Court has yet to find a cognizable federal claim.

Moreover, under California law, in order to state a tort claim against a public entity or public employee under state law, a plaintiff must allege compliance with the presentment of claims requirements of the California Government Claims Act. See Cal. Gov't Code §§ 945.4, 950.2; Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988); Fisher v.

17

Pickens, 225 Cal. App. 3d 708, 718, 275 Cal. Rptr. 487 (1990).

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that Plaintiff's First Amended Complaint fails to state any cognizable claims.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." Accordingly, the Court will provide Plaintiff with an opportunity to file a second amended complaint curing the deficiencies identified in this order. Lopez v. Smith, 203 F.3d 1122, 1126–30 (9th Cir. 2000). Plaintiff is granted leave to file a second amended complaint within thirty days.

If Plaintiff chooses to amend, the second amended complaint must allege violations under the law as discussed above. Plaintiff should note that, although he has been given an opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is advised that an amended complaint supersedes the original complaint, CDK Glob. LLC v. Brnovich, 16 F.4th 1266, 1274 (9th Cir. 2021), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Alternatively, Plaintiff may choose to stand on the First Amended Complaint, in which case the Court will issue findings and recommendations to a district judge recommending dismissal of the action consistent with this order.

Based on the foregoing, **IT IS ORDERED** that:

1. The Clerk of Court is directed to send Plaintiff a *pro se* (non-prisoner) civil rights complaint form (*Pro Se* 15 Form).
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
    a. file a Second Amended Complaint; or
    b. notify the Court in writing that he wants to stand on the First Amended

1 | Complaint.
2 | 3. Should Plaintiff choose to amend, Plaintiff shall caption the amended complaint "Second
3 | Amended Complaint" and refer to the case number 1:23-cv-01234-JLT-EPG.
4 | 4. **Failure to comply with this order may result in the dismissal of this action.**

IT IS SO ORDERED.

Dated:   **November 26, 2024**          /s/ *Erica P. Grosjean*
                                         UNITED STATES MAGISTRATE JUDGE